The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence Shuping. The appealing party has not shown good ground to reconsider the evidence; rehear the parties or their representatives; or amend the Opinion and Award except for slight modifications with respect to the average weekly wage. Furthermore, the Full Commission, on its own motion, in its discretion accepts into evidence the Form 22 Wage Chart dated February 24, 1993 and is hereby made a part of the record.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner with modifications as follows
FINDINGS OF FACT
1. Plaintiff is a 6' 3-1/2", approximate 235-pound single male who graduated from high school in 1987 and subsequently attended North Carolina State University for a year and a half where he contemplated majoring in textile chemistry. His prior work experience has included working at Moore Lumber Yard as a sales person selling tools and building materials, at Hardee's, at Living Well Fitness Center as a fitness instructor and sales person selling memberships to the premises, at Hanes Dye and Finishing as an operator, inspector and dye maker, at Guilford Mills in the warehouse and at Stroh Brewery in office services handling incoming and outgoing mail, on the loading dock and conducting plant tours.
2. In November of 1991 plaintiff initially became employed by defendant Highland Industries, Inc. and approximately a year later was transferred to the cycle checker's job he was doing when injured. Among his other duties as a cycle checker plaintiff was responsible for performing perpetual inventory checks on the premises rolls of fabric to insure the accuracy of both their yardage and location, which not only involved him operating a computer terminal, but physically checking the rolls in the warehouse and weighing them on scales when necessary to insure their weight was accurate requiring him to move the rolls of cloth in the course of either weighing them or placing them in their correct bins. Dependent upon their weight plaintiff did so by either forklift, hand truck or hand when the rolls weighed less than 300 pounds and in any case his cycle checker's job required him to lift and/or manipulate heavy rolls of cloth, which he no longer can because of the back injury sustained on the date in question.
3. The same rolls of cloth were from 5 to 84 inches wide and contained from zero yardage to several thousand yards of cloth resulting in them weighing from five to a couple thousand pounds. They were stored in the warehouse in bins and there were approximately four to six levels thereof extending 25 or more feet in the air requiring plaintiff to use a four to five hundred pound set of roll around stairs to reach the cloth rolls and querie them checking for the accuracy of their yardage and location.
4. In addition to his above-described responsibility for performing perpetual inventory checks, on occasion plaintiff was required to work in the warehouse loading merchandise for customer delivery similarly requiring the type of physical activity he can no longer engage because of the involved back injury.
5. Because he had taken personal leave the day before after his grandmother fell injuring herself plaintiff was behind in his work requiring additional computer time for him to catch up and as a result he arrived early for work on January 27, 1993 while the third shift was still there.
6. At the time in question on the same date plaintiff was standing on the previously described set of roll around stairs in the premises warehouse approximately ten to twelve feet above the concrete floor attempting to check the number on a roll of cloth in a bin there. Plaintiff, however, was unable to read the number on the particular roll, which was covered by black poly, and attempted to pull the black poly in order to read the roll number. In the process thereof the black poly covering tore resulting in the disabling and otherwise compensable injury that was subject of the Industrial Commission's disputed award herein when the black poly tore and plaintiff fell backwards off the roll around stairs landing on the concrete floor 10 to 12 feet below not only sustained back and left elbow injuries, but a dystrophic response to the involved injury manifested by his increasing symptoms of chronic incapacitating back and leg pain and hyper-sensitivity.
7. On the same day plaintiff was taken by ambulance to the emergency room of North Carolina Baptist Hospital where he was examined, treated and released to return to light duty work on January 30, 1993. In the interim, however, because of his worsened back and leg pain and numbness as well as becoming nauseated by the Anaprox prescribed for his injury, plaintiff returned to the emergency room two days later, which not only discontinued the medication initially prescribed for his injury because it was making him nauseous and provided new medication, but scheduled him for a follow-up at the Orthopedic Clinic on February 4, 1993 and recommended that he remain on strict bed rest until he was seen there.
On February 4, 1993 plaintiff was seen at the same hospital's orthopedic clinic by Dr. Gary G. Poehling, an orthopedic surgeon and Chairman of the Department of Orthopedic Surgery at the Bowman Gray School of Medicine, and remains under the care of Dr. Poehling, who has provided a conservative course of treatment for the involved injury and in particularly his resulting dystrophic response.
8. Plaintiff will retain a permanent disability from his injury, but has not yet reached maximum medical improvement and/or the end of the healing period therefrom and will not for at least two years thereafter, which is the time period ordinarily required for the dystrophic response he suffers to stabilize to a baseline level.
9. Although having undergone both physical therapy and a work hardening program; neither has been effective in relieving the chronic and incapacitating pain plaintiff suffers from the dystrophic response to the involved injury nor were they likely to have because of the very nature of the same condition.
10. In order to be able to understand the same condition and effectively cope with his chronic pain resulting therefrom plaintiff requires a multi-disciplinary program such as the functional restoration program recommended by Dr. Poehling, which not only involves traditional physical therapy, but occupational therapy designed to enable him to return to the type of structured work he will ultimately require because of his resulting permanent disability as well as psychological treatment to provide the understanding and coping skills required to effectively deal with his chronic pain. Much of plaintiff's questioned conduct, including his symptom magnification and lack of effort in participating in the physical therapy and work hardening programs, is due to his lack of understanding of his chronic pain and ability to effectively cope with it marked by him being ineffectual in attempting to protect himself from the same condition.
11. As a result of his chronic and incapacitating pain plaintiff is not only unable to return to his regular cycle checker's job or other employments similarly involving lifting or manually handling heavy objects such as the rolls of cloth there, but cannot sit, stand or walk for extended periods without incapacitating pain.
12. When, and if, he does return to work, plaintiff will require a structured job to accommodate his incapacitating pain, but before he does attempt to return to work everything that can be done should be done to enable him to effectively understand and cope with the same pain, including as part thereof, undergoing the type of multi-disciplinary functional restoration program recommended by Dr. Poehling.
13. Although Dr. Poehling not only recommends that individuals similarly suffering from chronic pain attempt to return to the type of alternate structured employment required once everything that can be done has been to enable them to effectively cope with their pain, but encourages them to approach their employer's about providing alternate structured work; unfortunately, however, an adversarial relationship oftentimes develops between the two and thus is not possible as has similarly and classically occurred in the instant case.
14. To the extent defendant-employer is able to provide the type of structured alternate work required, plaintiff completes the type of functional restoration program recommended by Dr. Poehling enabling him to understand and effectively cope with his chronic pain and his treating physician approves the alternate structured work offered; plaintiff is obligated to make a good faith effort to perform it or to have his compensation benefits suspended until he does. As previously stated, in the interim he remains unable to return to his regular cycle checker's job or any other work similarly requiring lifting or handling of heavy objects or extended standing, sitting or walking inconsistent with his chronic incapacitating pain.
15. Based upon the entire evidence in the record, the Full Commission finds that the correct compensation rate in this case should be $288.32.
* * * * * * * * * * * * * *
Commission concludes, with modifications, as follows: the Full
CONCLUSIONS OF LAW
an injury arising out of and in the course of his employment and as a result thereof developed a dystrophic response to the same injury manifested by the chronic and incapacitating back and leg pain he continues to experience entitling him to compensation at a rate of $288.32 per week from January 27, 1993 and continuing at the same rate so long as he remains totally disabled by the involved injury, subject to a credit for the compensation benefits paid under the disputed award herein prior to May of 1993 when those benefits were stopped. G.S. § 97-2(6); G.S. § 97-29.
2. Although he will retain some degree of permanent-partial disability from his January 27, 1993 injury plaintiff has neither reached maximum medical improvement and/or the end of the healing period from and following the same injury nor is he able to return to his regular cycle checker's job for defendant-employer or any other similar employment involving lifting or manipulating heavy weights such as the rolls of cloth there or continually sitting, standing or walking and defendant-employer has not offered him the type of alternate structured work he will ultimately require from the same injury.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the type of multi-disciplinary functional restoration program recommended by Dr. Poehling.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner, with modifications, and enters the following:
AWARD
account of his continuing total disability, compensation at a rate of $288.32 per week from January 27, 1993 and continuing at the same rate so long as he remains totally disabled, subject to a credit for the compensation benefits paid under the disputed award herein until May of 1993 when those benefits were stopped and to a reasonable attorney fee for plaintiff's counsel.
2. At this time a reasonable attorney fee in the amount of twenty-five (25) percent of the net (after credit for the benefits under the disputed award prior to May of 1993) compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the above award and forwarded directly thereto. For the balance of her fee defendant-carrier shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the type of multi-disciplinary functional restoration program recommended by Dr. Poehling, when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
4. Defendants shall bear the costs, including as part thereof, expert witness fees in the amount of $500.00 to Dr. Gary G. Poehling, $250.00 to Dr. James A. Maultsby and $100.00 to Cynthia P. Bodenheimer, each of whom appeared by way of deposition and gave expert testimony herein.
* * * * * * * * * * *
ORDER
Plaintiff's motion to amend the record which was submitted to the Industrial Commission on April 4, 1995 is hereby DENIED.
FOR THE FULL COMMISSION
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/mj 6/21/95